This is Ferreras v. American Airlines. This is 18-3143. Your Honor,Anthony Litsky for American Airlines,and I'd like to reserve four minutes if I could. That'll be granted. Thank you. May it please the Court. There are really two overarching issues in this case. The first is whether the district court applied the correct legal standard in certifying this class. The answer, as I'll explain in a moment, clearly is no, which means that vacater and remand is at the very least required. But the second question, and I submit the only real question, is whether a class could be certified here on a proper legal standard. And the answer to that is also no. So the immediate relief you're seeking is either vacate or reverse, depending on how we go, I guess? Yes. So I think at the very least, vacater is required because the district court, it seems to me, clearly applied the wrong legal standard. But could this class be certified? No. So that's why we don't think there's any point in vacater. We just think that the order should be that a class shouldn't be certified. We can do it on the record we have? Absolutely can do it on the record that you have. The facts, as far as I can tell, are undisputed. And there are two main problems based on it. I thought you actually depended on the fact that there were some disputes that weren't resolved. Well, they might be disputed facts as to the merits, but they're undisputed as to the class action question, which is whether, first of all, there are common questions that have common answers through common proof. And second of all, whether individualized inquiries predominate. I just give you an example. So as a commonality, the question that the district court identified as being a common question is whether there was a policy of refusing or discouraging people to take exceptions. That is right. And I understand you to be saying there's just no proof of that. But of course, they say, Mr. McGrath, if I'm saying his name right. He said he'd never given anybody permission. And in fact, people couldn't one say, well, that's proof in the record that, in fact, there was a policy and that people could have felt that there was just no point in this, that this was a kind of a wink and a nudge that American Airlines gave to supervisors like Mr. McGrath. And therefore, there there actually could be a class to be had. So first of all, that only goes to the question of commonality, not even to predominance yet. But the answer to your question is no, because it's true that Mr. McGrath, that there is testimony about Mr. McGrath, who is a supervisor at one of the three work groups who are represented by different unions, have different procedures as to that's the mechanics work group. And understood. I'm just trying to get at the point. You seem to be saying there's no evidence here that could ever support a class. And I'm just pushing back on that a little bit. If if they had the opportunity, could they make the class a narrower class, even if it was just a class of mechanics? So, OK, so here's it. We don't have any chance with a guy like McGrath in place and he's affecting American policy. Right. So so if it's agreed that they can make the class that they had, that it was actually certified because that class includes two other work groups. One of the we're only working on one point here. Right. So as the mechanics forget vacator, don't bother sending it back. There's no class that could be formed. I'm asking, could a class be formed for mechanics? No. No. So even as to mechanics, the evidence as to this commonality question is mixed. So there are some testimony that Mr. McGrath was just one of the supervisors in the mechanics group would refuse exceptions. But there's also testimony to the contrary. For example, Mr. Zub Zubby Yellam, who is a mechanic, was asked point blank. Is there a policy against granting these kinds of exceptions? And he says, no, that's a page. What can we do with that kind of mixed evidence? Well, what should we do with that? Well, you should you should require. Should we say mixed evidence, send it back and have the district court do perhaps what it should have done in the first instance? And engage in a rigorous analysis, as you've argued it didn't do. Or should we say on balance, we like the Blitzky or if I'm saying his name right, better than Mr. McGrath's testimony? Well, no, these are all these are all admissions of named plaintiffs. So I think, first of all, certainly at the very least, you should send it back. But there's no reason to send it back even as the commonality, because the question, of course, in commonality is whether there is a common question that can be answered with common proof. And when you have people even from the same work group saying some of them saying as party admissions, saying that there is a policy and others saying that there isn't the thing you do is you adjudicate these cases on an individual basis. They're just not amenable to class treatment. And even setting aside the commonality problem, you still have a predominance problem, which is not actually even a failure of proof. It's much worse than that. It's just inherent in their claims, because at the end of the day, the claim here is for overtime. Right now on that point. Of course, you're if I've understood your argument, your argument is there's no way to know because there's no record keeping to show. Leave leave the off the clock subclass out of this. Just the grace period and the meal break subclasses. As to them, you say you'd have to have a bunch of individual proof because there's no record keeping in that regard, although they don't particularly articulate it this way. I'm wondering if you would help me with how Tyson's foods might work in here. It can an argument be made that the fact that that records are kept, that should be on you, not on them. Well, there's the fact that there's no good record means we're enticing food land burdens on you guys. So you should lose. I mean, we're always enticing food land because that's that's a case is obviously binding on this court. But what Tyson foods held was not that when an employee doesn't hold records, you apply more lenient rule 23 standard. What what Tyson foods held was that in that case there was sampling evidence presented by an expert. And the reason that it could be proffered on a class wide basis is that it could also have been proffered by any individual plaintiff in an individual claim. Right. Tyson also say to the extent there's a lack of good record evidence about what people are doing. That's a that's a failing of the employer, not a failing of the employee. But there's no reading of Tyson. I think it's definitely an over reading of Tyson. If you didn't have that, the whole question in Tyson was whether you could rely on sampling evidence. And the court held that in that case you could because there was no evidentiary objection to the sampling evidence. And it was the kind of evidence that an individual plaintiff in an individual claim could have relied on. If you didn't have that in Tyson, certainly the decision would have come out the other way since that was what the case turned on. And more than that, there is no obligation on an employer's part to have timekeeping records match when employees actually work. There's no cases ever held that grace periods are unlawful. And in fact, two cases, Anjali's case from the district court in Los Angeles and the 11th Circuit decision in Babineau are indistinguishable. To this case, they both included grace period claims. And those classes were not certified precisely because there was no way to tell from the timekeeping records when people actually worked, whether when and how much they worked outside of their allotted shift time. And again, there's no legal obligation on the part of the employers for keeping that kind of information. So there's no basis to punish the employers either under Rule 23 or any other reason. After all, the reason that you have grace periods is precisely because they reflect the common fact that people watch TV and all that. You want to give them a little bit of flex. Right. You seem to make the argument that the district court didn't look at evidence, just that pleading. So they applied that in the wrong way. And so I want to read you something that the court said that's in there when you're in the same sentence with what you seem to point to is it's flawed or erroneous. It says eight, nine of the slip of pain. This is joint appendix 12 to 13. The plaintiffs have satisfied the commonality and predominance requirements here by setting forth allegations and initial evidence that hourly paid American employees at Newark Liberty are not being compensated, etc. Are we making the district court judge an offender for a word by using the word allegations when the judge also talks about initial evidence? But initial evidence is itself a problem because initial evidence suggests conditional certification. And you can just take it. You could say it's just that. But it could also suggest this. Of course, just saying, look, I recognize there's a whole bunch of case left to be done. But at this certification stage, the evidence has been put in is enough to persuade me on the evidence. And, of course, there's, you know, a half a page of record sites on 14 that there's enough there for me, the district judge to say, I think certification is OK. In other words, is it really fair to say he was only looking at allegations? I think it's it's I think it's more than fair. Not only did the district court say it, not just there, but in other parts of the opinion. For example, later in the opinion where the where the district court explained that you could fix predominance problems on a motion for decertification, he cited Fair Labor Standards Act conditional certification cases. But even if you just look at the kinds of things he says were actually proven in the record, for example, on J.A. 15, the district court says no personnel personal matters were attended to while employees were clocked in. That's one of the facts that he relied on. And the only way you could say that is by just relying on what they allege. Obviously, the facts are completely undisputed that if not everybody, at least most of the named plaintiffs themselves, presumably the best plaintiffs they had testified that, of course, people would clock in early and they'd watch TV. They'd read. They'd drink coffee. And all of that is fine. Of course, there's no problem with that. But it defeats predominance for sure. And the fact that the district court, despite that undisputed evidence, says that no personal matters were attended to while employees were clocked in, just demonstrates that the words and the analysis that the court is using is not just, you know, he used the wrong words, but he really applied the wrong standard to the facts. And at the end of the day, I'll save the rest for rebuttal, Your Honor. But we think it really doesn't matter because as in Angeles and Babineau, these kinds of classes can't get certified at all. Let me ask you a question. If we were to agree with your first point, is there more discovery to be taken? Do you think more discovery ought to be taken before if you prevail on your victor argument? Are there more depths to take? Is there other discovery to be done? For purposes of class certification, I don't think so, because the discovery we already have, including most notably admissions from the plaintiffs themselves, makes class certification here totally impossible. Again, I don't see how you could try this case when the question is whether, when and how much every single class member worked. Because after all, again, their claim is about overtime. So under the New Jersey wage and hour law, they have to demonstrate that they worked more than 40 hours in a particular week and weren't paid time and a half. And so how would you ever find out, for example, whether anybody worked outside their shift time without asking them? At the end of the day, there's no common answer. There's no common answer. And even if there were some common question to which there was a common answer, which there isn't, individualized inquiries would necessarily predominate. Individualized inquiries that go to the very elements of their claim would predominate. Is the question of whether American Airlines had a policy of discouraging people from asking for compensation for work done during the grace period or on meals, is that a common question? It's a common question, but there's no answer through common proof. So it doesn't satisfy commonality. That's that. Is is there whether there's a policy or not? There's no way to know whether there's actually a policy. Well, it's if there were a policy would only be a policy in the same way that Duke's had a policy that allowed. Well, there are three different work groups for first of all. So we have that problem. There's no evidence at all from the passenger service work group. And the only evidence from the fleet service work group is to the contrary. If you're just talking about mechanics, let's take it out of. Let's just indulge in a hypothetical. My colleagues all out for a moment. Sure. Isn't it possible that there could be a business somewhere that says, here, we're giving you grace period. We're giving you meal breaks. You know, same kind of system. A Scott, American Airlines, Scott. But then it actually says to its supervisors, look, I know we said that we give them. They could ask for compensation if they're really working. Don't you ever authorize. Is that not a is that not a circumstance where there's a question common for the whole company because of direction coming from higher up? One hundred percent of it. That's like the Bally's case that they say. If you had a case like that where there was just a policy, you have to show up early and we're not paying you. That kind of class can be certified. But the ever the actual evidence in this case. Hence, Judge Chigueras this question. Is there more depositions to be taken? No. Anything to be asked in that regard? Or is that all? Is that ground all been plowed? So. So no. For two reasons. If we send it back. No, I got you. And I think the answer to that is no. For two separate reasons. The first is just as the commonality, just setting aside even setting aside predominance. The actual testimony from the main plaintiffs demonstrates that whatever the policy is, it is not applied to class members in the same way. There are plaintiffs that testify that they had no problem seeking exceptions. So they're just alleging a policy that, as a matter of fact, doesn't exist or at least doesn't exist in a way. All we have to show is it doesn't exist in a way that applies to class members in a common way. But even setting that aside, you cannot solve the predominance problem in this case, even if you had a common question. Because even let's say there was such a policy. What's that? Because of damages. You've made that no, no, no. It's not damages. It's not damages. It goes to the elements of their claim. That is, whether they worked more than 40 hours a week in a particular week, but weren't paid time and a half. The first thing they have to show is whether they worked outside of their allotted time. There are a lot of shift time. And the only way to figure out whether somebody worked outside their allotted shift time is to ask them. Right. Because there's testimony here, for example, from Mr. Gonzalez that nobody said you have to. Right. So thank you. Please, the court. My name is Lee Shalab. I represent plaintiffs. Let me focus on several critical factors the court has to consider in evaluating predominance. And can I just start with a question? I can't help but read our hydrogen peroxide opinion and think it has some applicability here, perhaps. And maybe you can. This deals with the rigorous analysis issue. I mean, we held it in that case on page 321. Although the district court properly described the class certification decision as requiring rigorous analysis, some statements in the opinion depart from the standards we've articulated. You know how it ended. And your adversary points to allegations and initial evidence, you know, at this juncture, pleading requirements, other statements. Perhaps you can persuade us why our language from hydrogen peroxide shouldn't be applied in this case. I think it should be applied, Your Honor. But I think what the court has to do here is to look at the substance of what the district court here did. I don't think we should be focusing, as Your Honor pointed out, on specific terminology like allegations and initial evidence. I think what we have to look at is exactly what the district court did. Please don't mistake what I've said. I wasn't pointing anything out. I was asking questions. And I'm profoundly troubled by a district court judge who says, looking at the allegations, I think we're OK here. Because allegations aren't what they're supposed to be looking at. That's correct, Your Honor. But what the district court actually did is it looked at all the evidence. There's no more discovery to be completed in this case. We agree. The discovery is already completed with the exception of some additional depositions that we're taking now. But what the court did is it analyzed all the evidence. It looked at the deposition transcripts. It looked not only at the transcripts that the plaintiffs proffered on class certification. It looked at the transcripts that the defendants proffered on class certification. It considered the positive evidence. It considered the negative evidence. It considered the documents submitted on class certification. So while it did refer to the term allegations and initial evidence, I think what the court needs to do – Well, it also cited FLSA cases, too, which is a little troubling. Your Honor, it did. I can't explain why the court did that. It also says that the case was in its preliminary stages. This is the conclusion of summary judgment. Again, I can't explain why the court used that language. We weren't in the preliminary stages. We were in the middle of discovery. And I'm not sure that – Now we have multiple tiers where you're having a hard time explaining it. See if you can explain this, Mr. Shalem. The court has a responsibility to say in a 23 class action it can't do conditional certification. And yet it says we'll go ahead and certify it. It's enough at this juncture. What does at this juncture mean except for conditionally, which it's not allowed to do? It wasn't applying a conditional certification standard respectfully. What does at this juncture mean? That implies that at a later juncture we'll do something differently. Well, the court always has the ability at any stage of the case, and there's still some discovery, an expert discovery to be done, to decertify the case. And I think what the court was referring to, and I can't read its mind, but at this juncture it was referring to the possibility that there was additional discovery to be taken, and there still is. There's expert discovery to be taken in this case. So it was articulating the undisputed rule that at any phase of the case, even during trial, the court can decertify the case. There's evidence negating a finding of predominance. True enough, but doesn't the use of that language imply a tentativeness, a conditionality, that's at odds with Rule 23 as we've interpreted it in hydrogen peroxide and a number of other cases? Again, Your Honor, I would respectfully refer you to the substance of what the court did. The language doesn't necessarily comport with the specific language that this court has articulated and endorsed in other decisions. I can't refute that. Then address the point made by Mr. Litsky that there is literally no way to try this case without asking each individual defendant, did you work more than 40 hours that week, and were you working when you were on your grace period or at mealtime? There's no way to actually have common proof on those questions. You can, Your Honor, respectfully. The court has made very clear in Tyson Foods and other cases that you can use representative evidence. And what we have here is a situation where every plaintiff, again, if we looked at the facts here, we note that every single plaintiff who was deposed in this case testified that he worked before shifts, after shifts, and during gap periods. The defendant does not dispute that. Every single plaintiff said that. That's one. But they don't testify how much they worked. That's a different question. I think that's what the key to what the court's analysis has to be. It's got to be about, right, indeed, that's the very point. They say sometimes I did, sometimes I didn't. Sometimes I talk to my friends. Everybody, I think somebody said, yeah, we all did that. So how is the court supposed to know with a common statement that, yes, we can give money to all these people for overtime that they didn't receive when we don't even know as to your own named plaintiffs what they're entitled to or not entitled to? The court has to make an important distinction as to what the liability aspect of the case is and what the damage aspect of the case is. There are two issues here. In order to establish our claim, we have to show two things. One, that the class members worked, not how much they worked. That's a damages question. When you say that's a damages question, not how much, answer Mr. Litzy's question that, no, that's not just a damages question. That's a liability question because you don't know whether somebody was owed time and a half unless you know whether they worked more than 40 hours in a given week, and that is an individualized inquiry, period. Yes, Your Honor. It's a damages inquiry. We don't dispute that. No, not damages. Maybe you correct me if I'm wrong or correct him if he's wrong. Is it or is it not the case that you don't even have a claim for damages if you didn't work more than 40 hours in the week? Correct. Okay. So if you don't know whether the person worked more than 40 hours in the week because you'd have to drill down and ask each individual person, okay, let's look at your records. It looks like you were there 38 hours in this week. Now, how are you going to prove you worked two hours in your grace period and your meal period? I mean, that's not just a damages question. That's a liability question. Yes, Your Honor. It's a liability question and it's a damages question. The liability question is did you work? That's the liability question. Did you work? Every single plaintiff testified that he worked. There is no contrary evidence in this record, unlike other cases, that the plaintiffs worked. The next question is how long they worked. How long they worked is a damages question, and the court in Tyson Foods made abundantly clear. We're just crossing with each other. Can we or can we not agree that it is a liability question and not merely a damages question if you didn't work more than 40 hours in a week? If you didn't work more than 40 hours a week, that's a liability question, and it's also a damages question. It's both. Right. But it is more than a damages question. It's also a liability question. Correct. Now, I would like you to answer Mr. Matlitsky's argument that even setting aside the damages piece of it, going to liability, you don't have commonality or predominance because as to each individual plaintiff, including all those ones that say, yeah, we worked, you won't know in any given week whether they are entitled to overtime without an individualized inquiry because you don't know how much time they worked in a week without doing an individual record search and then asking them in that week where you're sub 40 hours, how much work did you do during grace period or meal break? Again, Your Honor, I would say that we could use representative evidence. The Tyson Foods case says that you can use representative evidence to establish that work was performed. What was the Tyson Food? There was much more commonality, would you say, with the plaintiffs were doing as opposed to the inquiry that would be necessary as to each individual plaintiff in this case? Right. I mean, the parties agreed in that case that they worked, right? Yes. Because they donned and doffed. They donned and doffed. So you have the commonality. Everyone was doing the same thing over and over and over. And here, each individual plaintiff would have to prove when and how much, when, if, and how much they were working. Yes. They have to prove that they worked before shifts, after shifts, and during meal breaks. So does the Tyson model fit in this particular model? The Tyson model fits to the extent that representative evidence in terms of what the plaintiffs were testifying about established that they worked. They also had a separate, they had an expert that used statistical methodologies to determine how much they worked. Could you do that in this case? No, Your Honor, you can't do that. No. I'm not disputing, Your Honor, that the determination about how long people worked, whether they worked more than 40 hours, is an individual question. And you can use the time records in this case when people show up. So you don't have a common answer. There's no common answer to damages. Yes. You cannot determine on a class-wide basis the length of time each individual worked. What you can do is to use as a proxy the time records, the courts in Rochdale, in Bally's, in the other cases we cited, cited use the time records as a proxy for making the determination about how long people worked, which is a damages question. Well, assume that's true, Mr. Shalob. That's going to, by definition, it's not going to tell you anything about whether they were working on breaks or during the grace period because the default in the system is you're shown as not working. There's no, I'm struggling to understand what your representative evidence would be. There's no record of any sort of people doing stuff during meal times or during the grace periods or when they're off the clock, except for anecdotally, right? There's not some record being kept someplace, oh, this person was working. Well, that's the only way they could prove their claims, Your Honor, is anecdotally through testimony. And doesn't that make it different from Tyson food? It makes it different from Tyson because in Tyson you knew they had to be donning and doffing because that was part of every single person's job. They had to be doing it. And so you could say, based on representative evidence, this is the average amount of time it takes to don and doff. We can use that as a proxy here. We don't have anything like that where you can point and say everybody's doing that thing and it takes approximately this much time to do it. There's nothing like that in this case, is there? I would say two things, Your Honor. One is whether or not work is required, whether somebody told somebody to do what is not an element of liability under New Jersey law. Somebody could be working, whether or not required, as long as the defendant knows or should know that they're working, that requires compensation. I'm trying to focus you in on Tyson because you're leaning on it hard. I'm trying to get you to either persuade me and my colleagues that we're wrong in thinking that Tyson was allowing representative evidence because there was an agreed upon thing that everybody did and an agreed upon understanding that it was going to take some period of time and the only question was how much time. All of the plaintiffs testified about the kind of work they were doing during these grace periods, Your Honor. They all testified. Not that they're doing one specific thing, like the Donning and Doffing situation in Tyson Foods, but they were moving aircraft. They were engaging in training. They were completing paperwork. I don't think the cases require in wage and hour class actions that all the class members have to be doing a specific type of universal work in order to establish that the requirements of class certification have been satisfied. But you rely on the Morales case, right? Morales versus Rochdale? Rochdale is a perfect example. Okay, then how do you deal with this language from that case? The court there said defendants contend that the only way the predominant standard is satisfied is if the court accepts that when an employee clocks in and checks out the employee is working. If not, then the case would devolve into a series of individualized inquiries. And then a little bit later in that same paragraph, the court says defendants are correct. Defendants are correct. How does that case and that statement from the Morales court help you? I mean, in your client's favor, it went on and said plaintiffs have made the requisite showing and explained commonality by unrebutted declarations showing that they did, in fact, work at certain points. But on the premise, the general premise about predominance, the court accepted the defendant's premise. So doesn't that kind of hit you where it hurts here in this case? I don't think so, Your Honor. I think that case is directly on point where you have the same argument the defendant makes here where you have to do an analysis of every individual circumstance and every individual class member to make a determination about whether they were working or whether they were not working. And what the court found in that case is because of the overwhelming nature of the evidence. Same situation as you have here where every plaintiff in that case, like this case, testified that they were engaged in work. They did different kinds of work. They worked at different departments. But the court found in that case, just like I think the court should find here or the district court found here, that the overwhelming nature of the testimony in terms of the quality and the quantity was that everybody worked. The determination about how long they were working, the court in that case found. Even if we accepted that, I'm not sure how that gets us to predominance and commonality. Assume that that's 100% true. Everybody was doing something. How does that answer the predominance and commonality question? Because as the Supreme Court said in Walmart, you can have common questions in droves, but you've got to have something to which there can be a common answer. I'd like to separate out for the court the commonality prong and the predominance prong. Commonality under Federal 23A2 only requires one common question that's apt to drive a resolution of one key issue, just one. It could be a fact of law. So here we have multiple common questions. Did American have a shift-based timekeeping policy? That's a common question that applies to everybody. The inquiry should end there, but we have other common questions. Did American know or should have American known that employees were working during grace periods? What is the appropriate measure of damages? These are all common questions. So I would address commonality separately, Your Honor. We think we have common questions here, and then under the applicable rule. You've only hit one-half of that. True, Your Honor. Where is the – how do we get to a common answer that will not be dragged into individual mini-trials? For those very things that you've identified. Two ways, Your Honor. One, as I said, representative evidence could be used. This court found that, I believe in RBS, that you could use representative evidence, and Tyson Foods says you could use representative evidence. Again, two issues. One is, were employees working? All the evidence shows that they were. Undisputed, American offers no contrary evidence at all. That's the work prong. Damages prong, which is a separate element, which the court in Tyson Foods says is not a barrier to finding predominance. There's always going to be, always, in every class action wage and hour case, an individual inquiry concerning the amount of time that employees work. If this court was to find that individual inquiries regarding damages is always a disabling issue on predominance, then no class action concerning wage and hour cases could ever be certified. Can I ask you, how do you square away the Babinow 11th Circuit case? Easily, Your Honor. In that case, you had conflicting declarations. You had situations where employees said they didn't work, which is directly contrary to the situation we have here. We don't have a single declaration. America submitted not a declaration, no testimony from anybody, not a single document disproving that employees were working during grace periods. So that could be a situation like U.S. Airways, where there was very little evidence. It could be a situation like Babinow, where there was very little evidence. This case is exactly like Rockdale. It's exactly like River Bay. It's exactly like Bally's, the district court decision from New Jersey, where the courts all found in grace period cases that the predominating focus was on the work problem and that we could deal with damages on a separate footing. You could bifurcate questions of damages. You could use affidavits. You could use declarations. As I said, Tyson Foods says damages is not a barrier to finding predominance. And you say there's still discovery to go. No, I think he said there's no need for it. I said for purpose of this class certification motion, no discovery is needed, Your Honor, because all the discovery demonstrates plaintiffs worked and that predominance could be established. Okay. Thank you. Thank you, Your Honor. Just a few points. First of all, I think I heard counsel say that you can't determine on a class-wide basis whether anyone worked more than 40 hours in a week, which I think is correct, and that just destroys at least predominance in this case and requires an order refusing or denying certification. The second point on Tyson Foods, even on the question of whether somebody worked, which as we discussed before is not enough to demonstrate liability. You have to show how much they worked to get them over 40 hours. Even on the question of whether somebody worked, it's true that these named plaintiffs say that they worked sometimes beyond their allotted shift, which was true in Morales and Babineau and the like. They also say they can't tell you when, how often, how much, and all of that. But this is not the kind of representative evidence that Tyson Foods allowed. As I said, the representative evidence that Tyson Foods allowed is the kind of sampling that an individual would be able to hold up and say, I'm using this to prove my own individual case. What do you make of counsel's argument that if we insist on commonality with respect to damages, you'll never be able to certify a wage class? Well, first of all, again, this is not with respect to damages. This is with respect to liability. And I think the argument that you'll never be able to certify a wage class is wrong for a few reasons. First of all, many if not most wage and hour cases are brought under the Fair Labor Standards Act. Rule 23 doesn't apply. And this court held in Reining that the similarly situated standard under 216B that does apply is substantially less burdensome than Rule 23. So you might not even have these issues. But even under state law, wage and hour claims, there are at least two kinds of paradigmatic cases that do get certified. One is like the Bowies case or Tyson Foods, where you just have a policy of somebody has to work before, you know, let's say before their shift. And a policy of not paying them. Your adversary pointed out that there is really no dispute in the death testimony and everything else that each of these people did work. Well, each of the named plaintiffs say they work, but they don't provide any basis to conclude that anybody else in the class did. You know, they found the best nine plaintiffs, I assume, that they had. But even beyond that, again, this is an overtime claim. So take Mr. Gonzalez. He's a part-time employee. Let's say he works 25 hours. It doesn't matter whether he worked beyond the 25 hours. You still have to get to 40 even to show liability. And then the third kind of case that uniformly would get certified is the Morales case. Because when you have records that do actually determine when people actually worked, there's no problem demonstrating commonality and usually predominance knowing nothing else about the case. But when you have a case like this, not only where you don't have records like that, but where you have affirmative testimony for the plaintiffs. Yes, we sometimes drink coffee and watch TV and the like. That makes it just like Angeles and Babineau, where there is no there is literally no way to determine whether, when or how much somebody worked without without asking them. And then just one final point. I don't think it matters in this case. But Comcast and other cases make clear that even if you thought that this was a damages issue, which we don't think it is, when you have damages, damages issues that overwhelm other common issues, there is no rule 23 exception for damages. Usually what happens is you have to have individual damages calculations where you have sort of a classified basis for determining damages. But if you thought that this was a damages issue, the whole case would still be about whether, when and how much somebody worked. How would you actually try this case without calling every single person? The only way you could do it is by undermining the defendant's due process rights and actually defending the claims against them. And by undermining the rights of named plaintiffs, unnamed plaintiffs who would be precluded if the representative evidence here weren't good enough to prevail. Thank you, counsel. Thank you. We'll take the case under advisement and thank counsel for their excellent oral arguments and briefing in this case. We'd also like to meet you at sidebar if you're amenable, and we'll ask the clerk to adjourn.